**SIGNED this 06th day of November, 2008.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | X | |
| MELISSA CATHERINE POWELL | X | CASE NO. 08-60204 FRM |
| | X | |
| DEBTOR | X | CHAPTER 7 |

MEMORANDUM OPINION

This Court held a hearing on August 13, 2008 on the Debtor's Motion for Order Avoiding Judicial Lien of Steven D. Spahr and Barbara J. Spahr on Exempt Property. This Court has jurisdiction under 28 U.S.C. §1334(a), (b) and (d), 28 U.S.C. §151, 28 U.S.C. §157(a) and (b)(1), and the Standing Order of Reference in this District. This is a core proceeding under 28 U.S.C. §157(b)(2)(A), (B) and (O) as it is a question of whether a certain judicial lien should be avoided with respect to certain exempt property of the Debtor, and is, therefore a proceeding arising under Title 11. This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law as required by Bankruptcy Rule 7052 which is made applicable to contested matters under Bankruptcy

1

Rule 9014.

## Findings of Fact

The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on February 28, 2008. The Debtor listed on Schedule C – Property Claimed as Exempt four (4) tracts of real property (the "Properties") as follows:

| Property Description | Value of Claimed Exemption | Statute |
|---|---|---|
| 1. 219 Timberline Road– homestead | $3,000.00 | 522(d)(1) |
| 2. 6104 Hwy 36- real property | $1,374.25 | 522(d)(5) |
| 3. 3503 East Adams Avenue- real property | $2,937.52 | 522(d)(5) |
| 4. 4090 East Hwy 190- real property | $ 94.66 | 522(d)(5) |

The foregoing "values" are the amounts scheduled by the Debtor as being exempt over and above the scheduled consensual contractual liens against such properties.

The Debtor scheduled the current value and amount of secured claims of the Properties on Schedule A as follows:

| Property Description | Current Value of Debtor's Interest Without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|
| 1. 219 Timberline Road– homestead | $155,000.00 | $152,000.00 |
| 2. 6104 Hwy 36- real property | $ 34,982.00 | $ 33,607.75 |

   3. East Adams Ave.
      real property                  $ 27,500.00          $ 24,562.48

   4. 4090 East Hwy 190-
      real property                  $ 36,000.00          $ 35,905.34

No objections to exemptions were filed by any party. The Debtor filed her Motion to Avoid Lien against the properties on June 24, 2008 pursuant to 11 U.S.C. §522(f) of the Bankruptcy Code claiming the Spahrs' judicial lien impairs exemptions to which the Debtor is entitled under 11 U.S.C. §522(b)(2) of the Bankruptcy Code.

     Steven D. Spahr and Barbara J. Spahr, as co-personal representative for the Estate of William J. Spahr, obtained a default judgment against the Debtor for $1,120,357.82[1] based on the Debtor's breach of fiduciary duty, false representations and actual fraud.[2] The Spahrs abstracted this judgment which was recorded in Volume 06619, Page 749 (Document No. 07-00044584) of the Official Public Record of Real Property, Bell County, Texas. The Spahrs filed an adversary complaint against the Debtor alleging non-dischargeability of this debt and obtained a default judgment holding the debt fully non-dischargeable.

     The Spahrs claim that the judicial lien does not impair the exemptions to which the Debtor is entitled under §522(b)(2). The Spahrs assert that the Debtor is limited to the exemptions as monetarily claimed in her Schedule C and that the Spahrs are entitled to provide evidence of the Properties' values to show that there is unexempted equity available to fund some of the Spahr's lien.

---

[1] After settling with Debtor's former employer, there remains $630,357.82 principal due plus interest from September 19, 2005.

[2] There is no indication in the Complaint as to whether the Debtor was prosecuted for her alleged misdeeds; but, if they are true, prosecution would seem most appropriate.

The Debtor claims that since the Spahrs failed to timely object to the Debtor's exemptions, they are prohibited from now challenging such in a lien avoidance action. The Debtor further asserts that what she has claimed as exempt under Schedule C has no bearing on whether she may avoid the Spahrs' lien under §522(f) based on its statutory language.

## Issues Presented

1) Exactly what was claimed and allowed as exempt?

2) Are the Spahrs, in defense of a lien avoidance motion under §522(f), foreclosed from challenging the exempt nature of the properties in question due to their failure to timely object to the Debtor's exemption claims?

## Conclusions of Law

1) <u>Exactly what was claimed and allowed as exempt</u>?

Section 522(l) of the Bankruptcy Code requires a debtor to file a list of the property that the debtor claims as statutorily exempt from distribution to creditors. Federal Rule of Bankruptcy Procedure 4003 affords creditors and the bankruptcy trustee thirty (30) days to object to claimed exemptions unless within such period further time is granted by the court to object. No one objected to the exemptions.

The Debtor utilized 11 U.S.C. §522(d)(1) and (5) in her real estate exemptions. Such subsection reads in relevant part as follows:

> (d) The following property may be exempted under subsection (b)(2) of this Section:
>
> (1) The debtor's aggregate interest, not to exceed $20,200.00 in value, in real property . . . that the debtor . . . uses as a residence, . . .
>
> (5) The debtor's aggregate interest in any property not to exceed in value $1,075.00 plus up to $10,125.00 of any unused amount of the

exemption provided under paragraph (1) of this subsection."

11 U.S.C. §522(d)(1) and (5).

As stated above, the Debtor scheduled under the column entitled "Value of Claimed Exemption" on Schedule C – Property Claimed as Exempt the following values: $3,000.00 for the homestead; $1,374.25, for the Hwy. 36 property; $2,937.52 for the East Adams Avenue property; and $94.66 for the Hwy. 190 property. Those amounts were computed by the Debtor subtracting the amount of the consensual contractual lien indebtedness against such property from the current value of the Debtor's interest in such property as listed on Schedule A - Real Property which the Debtor filed in this case. Such amounts are within the statutory or monetary limitations contained in §522(d)(1) and (5).

So, the question becomes, "Did the Debtor exempt the total fee interest in such real property as exempt or just the value claimed as exempt on Exhibit C, i.e. $3,000.00, $1,374.25, $2,937.52 and $94.66 respectively as no one has objected to her exemptions. Remarkedly, this is an issue about which there has been some controversy.

We should start with the Supreme Court. In the case of *Taylor v. Freeland & Kronz,* the debtor had claimed as exempt proceeds from a lawsuit as well as a claim for lost wages and listed the value of those items of property as "unknown". No objection was filed to such claim of exemption. Ultimately, the lawsuit was settled for a sum in excess of the applicable dollar limit under §522(e). The United States Supreme Court held that the trustee was precluded from contesting the claim of exemption since the thirty day period to act under Rule 4003(b) had expired and that the debtor was entitled to all the proceeds of the lawsuit even though the debtor collected substantially more than the specific amount which could be exempted under the statute. The court

ruled that in claiming the value of the lawsuit as "unknown", no dollar limit was specified, so it was clear that the debtor was claiming the entire 100% of the lawsuit as exempt. *Taylor v. Freeland & Kronz,* 503 U.S. 638 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992).

The Eleventh Circuit in the case of *Allen v. Green* had a slightly different fact situation. In *Green* the debtor claimed a lawsuit as exempt listing the value as $1. The trustee agreed that listing the value at $1 indicated a contingent value and not that the lawsuit only had a value of $1. The Eleventh Circuit felt this case was similar to the *Taylor* case (listing the value as "unknown") and concluded that the full amount of the settlement fund was exempt even though it ended up being more than the dollar amount allowable under §522(d) because no one had objected to the exemption. *Allen v. Green (In re Green),* 31 F.3d 1098 (11th Cir. 1994).

The Ninth Circuit BAP had a slightly different fact situation which is more in line with the case at bar and reached a different result. In the *Chappell* case, the debtors had claimed as exempt a homestead using a stated value of $21,511.25 which was, "the arithmetic difference between the value of the residence and the consensual liens." *Kline v. Chappell (In re Chappell),* 373 B.R. 73, 77 (9th Cir. BAP - Wash. 2007). The BAP used the following yardstick: "it is important that trustees and creditors be able to determine precisely whether a liquid asset is validly exempt simply by reading the debtor's schedules." Citing *Hyman v. Plotkin (In re Hyman)* 967 F.2d 1316, 1319 n.6 (9th Cir. 1992). "Any ambiguity in the schedules is to be construed against the debtor. Id." Id.

The Ninth Circuit BAP found that the factual situation in *Chappell* was distinguishable from that of *Taylor* and *Green* because in *Taylor* and *Green* "the debtors expressed an intent to claim the entire proceeds of an asset in an undetermined and unspecified amount as exempt. In the present case before this panel, the debtors exempted a specific amount, $21,511.25 under a colorable basis,

6

and gave no indication of an intent to claim any more than that specific amount." Id. at 78.

The *Chappell* court also analyzed the application of the Supreme Court case of *Owen v. Owen,* 500 U.S. 305 (1991) to the case at bar. The *Owen* case concerned whether a pre-existing judgment lien could be avoided under §522(f). Under Florida law, pre-existing liens were an exception to the Florida homestead exemption. The *Chappell* court analyzed *Owen* as follows, "the Court observed that most of the federally listed exemptions at §522(d) are explicitly restricted to the 'debtor's aggregate interest' or the 'debtor's interest' up to a maximum amount, noting that the federal homestead exemption at that time allowed the debtor to exempt '[t]he debtor's aggregate interest, not to exceed $7,500.00 in value in . . . a residence." Id. at 79 citing *Owen* at 310. The *Chappell* court also felt it important that the *Owen* court found, "at least for purposes of impairment of federal exemptions federal and state exemptions are to be given equivalent treatment." Id. The *Chappell* court then noted that controlling Ninth Circuit authorities required post-petition appreciation in property of the estate to inure to the benefit of the estate citing several Ninth Circuit cases. Therefore, the BAP limited the debtor to the value the debtor scheduled as the value of the exemption[3].

The bankruptcy court in *In re Cormier* came to a similar result. Specifically, the court stated, "[t]his court believes that §522(d)(5) is direct and unambiguous. An individual debtor may exempt his or her interest in any property not to exceed a value of a maximum specific amount. Interpreting the statute as an 'in-kind' exemption does not give enough weight to the language 'not to exceed in

---

[3] The *Chappell* court noted, however, that "while postpetition appreciation in value of property inures to the benefit of the estate, the estate's interest in the appreciation must be limited by the ability of the debtors to obtain the maximum value of their federal exemptions." *Id.* at 82. The trustee conceded that the debtors were jointly entitled to up to $36,900 (plus any available wildcard) from the increased value postpetition.

7

value'". *In re Cormier*, 382 B.R. 377, 393 (Bankr. W.D. Mich. 2008). The court adds, "[t]he language of §522(d)(5), contrasted with the 'in-kind' exemption subsections, encourages a reader to conclude that a difference must exist – the maximum stated amount must mean *something*. As noted above, the statute says *nothing* about a debtor's scheduled value begetting an unassailable in-kind exemption." Id. at 394.

> The *Cormier* court concludes with a quote from another case stating:
>
> If a debtor intends to fully exempt a particular piece of property in its entirety, regardless of its value, then the debtor should unambiguously express this intention in his schedules. Where the debtor makes a clear manifestation of his intent to seek an unlimited exemption in the specific piece of property, then the trustee has ample notice and can either file an objection or seek an extension of time in which to conduct further investigation. If the trustee fails to object, or fails to obtain a timely extension, then the trustee cannot subsequently challenge the validity of the exemption. *Heflin*, 215 B.R. 536 (citing *Taylor,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed. 280). FN 29

Id. at 397.

Section 522(d)(1) and (5) allow the Debtor to exempt her **aggregate interest** in the real property in question. These are not "in kind" statutes. However, when the Debtor places a value on her exemption under (d)(1) and (5) which is less than the monetary amount allowable under the statute and such value was reached by deducting the amount of debt from the value of each such listed property as set forth on Schedule A; it is clear, at least to this Court, that the Debtor's intention was to exempt the maximum allowable under the federal exemption statute. It is obvious that in this particular situation, the Debtor is attempting to exempt any and all equity she may have in the Properties up to the federal exemption limit. There is no intent to exempt the Properties in their entirety. Even so, this is not determinative of the issue at hand as discussed below.

2) <u>Are the Spahrs, in the defense of a lien avoidance motion under §522(f), foreclosed from challenging the exempt nature of the properties in question due to their failure to timely object to the Debtor's exemption claims</u>?

The Court does not agree that the Debtor is limited to her claimed exemptions on Schedule C for purposes of lien avoidance under §522(f). Section 522(f) provides in pertinent part as follows:

> . . . the debtor may avoid the fixing of a lien on an interest of a debtor in property to the extent that such lien impairs an exemption **to which the debtor would have been entitled under subsection (b) of this section,** if such lien is –
>
> (A) A judicial lien . . .;

11 U.S.C. §522(f)(1). (Emphasis Added).

Not surprisingly, the Debtor relies on the opinion of Judge Leif Clark in the *W.K. Montgomery,* a case from 1987 that interpreted §522(f). Judge Clark in the *Montgomery* decision focuses on the language "**to which the debtor would have been entitled under subsection (b) of this section".** The *Montgomery* decision basically says that it is irrelevant whether a piece of property has been claimed and allowed as exempt under §522(b) because no one objected. The issue under §522(f) is whether the debtor **would have been entitled** under subsection (b) of this section exempt the property encumbered by the judicial lien; not whether an exemption has been granted. Specifically, Judge Clark states,

> A lien avoidance action, however, does not place in issue the debtor's **entitlement** to the exemption so claimed. It focuses instead on entitlement to lien avoidance. Section 522(f) by its terms restricts the availability of lien avoidance to property **otherwise exempt under §522(b).** An exemption which the debtor acquires solely by default pursuant to §522(l) is **not** necessarily 'an exemption to which the debtor would have been entitled under subsection (b) of this section [section 522]'.

*In re Montgomery*, 80 B.R. 385, 388 (Bankr. W.D. Tex. 1987).

The Supreme Court then addressed the issue in *Owen v. Owen,* 500 U.S. 305, 11 S.Ct. 1833, 114 L.Ed (1991). The Supreme Court, per Justice Scalia, held that the question to consider in determining whether avoidance is possible under §522(f) is to ask not whether the debtor is entitled to exempt the property that is subject to the lien, but rather to ask whether the property would be exempt if the lien did not exist. If this is the case, the judicial lien "impairs" the exemption and it is subject to avoidance. In Justice Scalia's words "§522(f) [establishes the baseline] against which impairment is to be measured, not an exemption to which the debtor 'is entitled,' but one to which he 'would have been entitled'. The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality. 'Would have been' but for what? The answer given, with respect to the federal exemptions, has been but for the lien at issue, and that seems to us correct." 500 U.S. 305, 311; 11 S.Ct. 1833,1837.

For various reasons, other bankruptcy courts have held that "exemption by default" as is allowed by *Taylor* does not apply to lien avoidance motions. For example in the Ninth Circuit, the cases of *In re Mohring,* 142 B.R. 389, 394 (Bankr. E.D. Cal. 1992), *aff'd mem.,* 153 B.R. 601 (9th Cir. BAP 1993), *aff'd mem.*, 24 F.3d 247 (9th Cir. 1994), and *In re Morgan,* 149 B.R. 147, 151-152 (9th Cir. BAP 1993), both concluded that an exemption arising under §522(l) does not arise under §522(b), and thus cannot support lien avoidance under §522(f). *Mohring* reasons, "[t]he exemption by default under §522(l) is not an exemption 'to which the debtor would have been entitled under subsection (b) of 11 U.S.C. §522,'" 142 B.R. at 394 (citing *In re Montgomery,* 80 B.R. 385, 388 (Bankr. W.D. Tex. 1987) and *In re Frazier,* 104 B.R. 255, 258 (Bankr. N.D. Cal. 1989).

On other grounds, courts of *In re Streeper,* 158 B.R. 783 (Bankr. N.D. Iowa 1993) and *In re Maylin,* 155 B.R. 605 (Bankr. Me. 1993) arrive at the same result. In *Streeper*, the court relies in part on *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed. 2d 350 (1991) in holding that §§ 522(l) and 522(f) serve different functions, so that under §522(f) and *Owen*, the "court must ask whether avoiding the judicial lien of Cascade Lumber [a secured creditor] would have entitled the Streepers to the homestead exemption as of the date of their petition," for if the homestead "would have been exempt under this hypothetical situation, the Streepers may avoid the lien." *Streeper*, 158 B.R. at 787. Likewise, the *Maylin* court explains that a §522(f) lien avoidance motion is one where the secured creditor is hauled into bankruptcy court where it may otherwise have no interest since the lien passes through the bankruptcy under *Farrey v. Sanderfoot,* 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed. 2d 337 (1991). 155 B.R. at 613.

For purposes of §522(f), the issue starts with the inquiry of whether we are dealing with property the debtor would have been entitled to exempt not whether the debtor has scheduled them as such.

The Debtor also relies on the fact that Congress amended Section 522(f) of the Bankruptcy Code subsequent to the *Montgomery* decision and added a specific definition of impairment to §522. §522(f)(2) was added which states as follows:

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of –

(i) the lien:

(ii) all other liens on the property; and

(iii) the amount of exemption that the debtor could claim if there were no liens on the property; exceeds the value that debtor's interest in the property would

11

>    have in the absence of any liens.

11 U.S.C. §522(f)(2)(A).

So, the question becomes, did the 1994 amendment to the statute have the effect of rendering the *Montgomery* case moot or of no precedential value? This Court thinks not. The rationale of *Montgomery* certainly seems in line with that of *Owen*. What the amendments to §522(f) under the Bankruptcy Reform Act of 1994 do is to resolve difficulties in the interpretation of "impairment" for purposes of the statute. The resolution is accomplished by the addition of a definition of impairment which sets out a mathematical formula for the courts to apply to determine whether a lien impairs the debtor's exemption. The statutory language specifically mandates the bankruptcy court in lien avoidance proceedings look at the exemption the Debtor "could claim," not the exemption actually claimed and allowed. This is the *Montgomery* case. So, does the judgment lien actually impair an exemption because the sum of all liens on the property together with the value that the debtor could claim as exempt in the absence of liens on the property exceed the value of the debtor's interest in property if it were not encumbered by the judgment lien. *See, In re Jakubowski,* 198 B.R. 262 (Bankr. N.D. Ohio 1996); *In re Silveira,* 141 F.3d 34 (1st. Cir. 1998).

There is extensive commentary supporting this new definition in the legislative history to the amendments. *See,* 140 Cong. Rec. H10, 764 (daily ed. Oct. 4, 1994), *reprinted in* App. Pt. 9(b). The legislative commentary provides four scenarios, one of which reflects our case, in which the courts had reached decisions that were viewed as inconsistent with congressional intent under the Bankruptcy Code prior to the 1994 amendments.

The situation aligned with our case is where the unavoidable senior liens may be slightly less than the value of the property. For example the property may be worth $100,000.00 and the

unavoidable mortgages on the property may equal $90,000.00. The debtor's equity in the property is $10,000.00 and the debtor's exemption for purposes of this example is $10,000.00. In the absence of any other liens on the property, the debtor would be able to claim his or her entire exemption of $10,000.00. However, if a judicial lien in the amount of $20,000.00 has attached to the property, the question of avoidance of that judicial lien arises. The commentary indicates that the lien should be avoided in its entirety. 140 Cong. Rec. at H10,769 (daily ed. Oct. 4, 1994), *reprinted in* App. PT. 9(b). *See also, In re Sanglier,* 124 B.R. 511 (Bankr. E.D. Mich. 1991)(that reaches this result under the Bankruptcy Code prior to the 1994 amendments).

"[T]he petition date is the operative date to make all §522(f) determinations," so that the value of the liens, the value of the property and the amount of the exemption are all measured as of the date of the filing of the petition. *In re Salanoa,* 263 B.R. 120, 123 (Bankr. S.C. Ca. 2001), *See also, In re Hall,* 327 B.R. 424, 427 (Bankr. W.D. Mo. 2005)("[T]he appropriate time for determining the value of the property subject to a lien which the debtors seek to avoid under §522(f) is the date on which the petition was filed.")(citations omitted).

Applying §522(f) to our facts, the exemption that the Debtor could claim if there were no liens on her homestead and the three other properties would be a total of $21,275.00. See 11 U.S.C. §522(d)(1) and (5). For our purposes, the Court has used the full exemption amounts of $20,200.00 in the Debtor's residence under §522(d)(1) and $1,075.00 under §522(d)(5) as the Debtor is attempting to avoid the lien on her homestead as well as three other real properties she owns.

The Spahrs' lien ($630,357.82) plus all other non-avoidable liens on the property (the total of the four mortgages from Schedule A, $246,075.57) plus the amount of the exemption the Debtor could claim if no liens encumbered the property ($21,275.00) equals $897,708.39. The value of the

Debtor's real property listed on Schedule A is $253,482.00. The amount of the liens plus the Debtor's exemption exceeds the scheduled value of the property by $644,226.39 ($897,708.39 - $253,482.00). So, we know the exemption is impaired. In the absence of the judicial lien, the Debtor would be entitled to exempt $21,275.00 in equity assuming the value of the Properties reaches that high. Here, the value apparently does not since the "value" of the scheduled equity of all four Properties totals only $7,406.43. The Spahrs' lien, therefore, should be avoided in its entirety as the Debtor's claimed exemption is totally impaired.

To the extent the Properties were, on the petition date, worth more than the total of the contractual liens as of the petition date plus the full amount the Debtor could exempt ($267,350.57), then the Spahr's judicial lien would be preserved to the extent of such excess value. *See, In re Silveira,* 141 F.3d 34 (1st Cir. 1998)(Debtor could avoid creditor's judicial lien on debtor's primary residence only to the extent necessary to prevent impairment of debtor's claimed exemption).[4] If the Spahrs would like to offer such proof, the Court is amenable to holding a hearing for such purpose.

###

---

[4] In *Silveira* the judgment lien was $209,500.00. The amount of all liens exceeded the value of the homestead by $185,180 which was the extent to which the lien was impaired. The remainder of the judicial lien in the amount of $24,320.00 ($209,500.00 - $185,180.00) was not subject to avoidance.